D. GILL SPERLEIN, SBN 172887
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94114
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorneys for Serafin "Stefan" Perez

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### Oakland Division

| | |
|---|---|
| Serafin "Stefan" Jose Perez Jr., | Case No. 4:21-cv-06190 (JCS) |
| Plaintiff, | SUPPLEMENTAL DECLARATION OF STEFAN PEREZ IN SUPPORT OF PRELIMINARY INJUNCTION |
| v. | |
| The City of Petaluma, California, and the Petaluma City Council, | |
| Defendants. | |

I, Stefan Perez, declare under penalty of perjury:

20. [1]Everything I state in this declaration is from my personal knowledge and my statements are true.

21. I am 28 years old. I have never been involved with the court system before. After the City Council removed me from the Ad Hoc Committee, I reached out to at least eight attorneys. Either they did not return my calls or the price they

---

[1] To avoid confusion between the two declarations the paragraph numbering from the Stefan Perez's original declaration is continued here.

-1-
Perez Supplemental Declaration
Case No. 4:21-cv-06190 (JST)

wanted to charge just for a consultation was more than I could afford. I engaged the Law Office of D. Gill Sperlein on July 28, 2021.

22. On August 2, 2021 my lawyer sent a letter to the City Attorney warning that the City's acts violated the First Amendment. The letter provided legal citations for the assertion and warned that if the City did not reinstate me by August 9, 2021 that we would file suit and seek a temporary injunction. The letter also warned that, "[u]nfortunately, little time remains before the next Committee meeting, which is currently scheduled for August 17, 2021. Therefore, I must ask that the City comply with this demand within seven days. I have attached a copy of that letter as **Exhibit D.**

23. The City never responded to the letter.

24. Even now, I am not certain which of my social media posts caused the City to remove me from the Ad Hoc Committee. The only one that anyone from the City of Petaluma brought to my attention was the one I discussed in my earlier declaration. See, Dkt. No. 5-1 at ¶9.

25. With regard to the other social media postings the City submitted to the court, I can say the following. None of them were intended to be racist. However, some were about racism and some were intended to question how society discusses racism.

26. For example, my post from November 24, 2017 about Native Americans going "back into hibernation until next year's wave of viral 'woke' videos" is a critique about how Native Americans are only ever acknowledged by mainstream media around Columbus Day. As a Native American, I personally find this insulting to only be relegated to giving the same argument once every year. Then never talk about any real issues facing indigenous folk in this country.

-2-

Perez Supplemental Declaration
Case No. 4:21-cv-06190 (JST)

27. My post from March 29, 2017 shows a diagram from a civil engineering text book that looks like a swastika. My caption reads "I always knew civil engineering was code for #whitesupremacy." Ironically, my post was meant to poke fun at how people can intentionally or unintentionally mischaracterize something to be racist when there is no racist intent to begin with.

28. On April 30, 2020, the ADL posted an article claiming the popular online video gaming store Steam was a white supremacist outlet. I thought this was a gross mischaracterization of Steam and the gaming community so I implemented the technique of "agree and amplify." I sarcastically agreed with their claim and amplified the absurdity of it by replying with a photoshopped picture of Adolf Hitler playing X-box. My caption read, "the signs were always there." The joke being that Hitler must've only became a Nazi after playing video games. A ridiculous statement.

29. My post from October 21, 2019 about making a movie about the Tulsa massacre comes from my love for film and especially the empowering nature of blaxploitation as a way to talk about race in an entertaining way. I'm aware of the Tulsa massacre and believe it would make for a fantastic film. Either as a serious melodrama like "12 Years a Slave" or a stylish exploitation film like "Django Unchained."

30. In Aaron Zavala's Declaration he claims that Zahyra Garcia stated that I had "targeted her." I have also seen the e-mail in which Ms. Garcia claims that I targeted her and that she did not feel safe around me. I note that the e-mail offers no specific allegations and frankly I am not certain what she is referencing other than my social media posts, none of which were directed at her.

31. In its opposition papers, the City also states that two people claimed I had doxed them. Opposition at 3:8-13. I am aware these allegations were made, but I categorically deny the accusations. I have never engaged in any doxing activity.

32. On March 18, 2021, the City's facilitator sent me an e-mail that included "rules for engagement for the AHCAC." The e-mail included remarks specifically addressed to me including the following: "Please note that no one will be taken off of the committee unless that person violates the rules of decorum and engagement listed below." I have attached a true and correct copy of the e-mail as **EXHIBIT E**.

33. I attended Ad Hoc Committee meetings on April 20, 2021 and May 18, 2021. Both of the meetings went smoothly, and the Committee completed its agenda at both.

34. At the beginning of the April 20th meeting the City's facilitator, Tracy Webb, made a statement about meaningful engagement. I transcribed the following from the video recording of the Zoom meeting which is available through the City's website. At the 00:27:00 time mark, she said:

```
Meaningful engagement: we really want robust conversation,
and it's really important that people feel that they can
express what they want to express. Even if it is the quote-
on-quote 'outlier opinion,' it does not matter. There could
be a spark of brilliance in it that could get the committee
to a point of consensus. So we want you to feel very, very
comfortable sharing.
```

35. At the 00:27:29 time stamp, Ms. Webb also took about three minutes to read the rules of engagement that appear in e-mail I attached as **EXHIBIT E**.

36. I have always followed the rules set forth in the e-mail and I have always treated the facilitator and other committee members with respect. At least at the first two meetings that I attended, all the other Committee Members also followed the rules.

37. The only other exchange that was remarkable at the April 20th meeting was an exchange where I had some questions about the term "restorative Justice" and Committee Member Kinyatta Reynolds told me I should Google it. This is the exchange which began at the 2:18:42 time stamp.

-4-

STEFAN – "Hello. I just wanted to give my opinion on keeping restorative justice separate only because it feels pretty important and it has been brought up a number of times. I'm still not quite clear on it. If I vote, I just want to know exactly what I'm voting on. So, to keep it separate, is that okay? That's just my opinion on it."

TRACEY – "I think if you want to keep it separate, we can and then people who want to vote just for that can or if they want to vote for the other bucket of community engagement, they [cuts out briefly] can also do it that way as well."

KINYATTA – "It sounds like, Stefan, you need to be doing some Googling. There's a lot of terms I think that maybe are in these things that you don't know yet. It might be-

STEFAN – "It's only just that one."

KINYATTA – "It might behoof you to maybe just Google some of these things."

TRACEY – "Because it's very rich. There's a lot under restor- that's why I didn't want to answer it. Because it's so rich."

STEFAN – "It seems like there's quite a bit. It's very-"

TRACEY – "Yeah. Broad."

38. Ms. Webb addressed this exchange at the May 18th meeting for about 90 seconds starting at the 00:08:57 timestamp.

I want to mention a couple of things in general that happened at our last meeting. At one point, somebody had a question about a topic that we were discussing, and another person told them just to go to the internet and look it up. And that's fine if it's stated in a general manner. But this is a learning community. This is about questions and learning and growing. So, no one should be shut down. We want to be very careful that our language and our tone does not shut anyone down. If that happens, I am going to say something. If I don't say something, those of you, particularly on the committee that produces these, you have my text. Send me a text if I miss it because I'm focused. The other thing is we want to be very careful about what is said and done in social media outside of this meeting. We have no right to tell anybody what to say or to post, but we are trying to build community at large by first creating a community here, where we can have conversations. So if we're attacking each other, or there are perceived attacks outside -- or if we're

-5-

```
attacking other members -- outside of this meeting, that's
problematic. That's problematic because it goes against
creating a sense of community. So I just want it to be very
clear about that. And we're trying to work together, not to
tear each other apart, even if we have different points of
view."
```

39. Other than those 90 seconds, which had to do with Ms. Reynolds' arguably inappropriate comment to me, the meeting proceed as scheduled and all agenda items were covered. There were no disruptions. No one raised their voice. There was no conversation about me or my media posts.

40. The video recordings of the two Zoom meetings will be submitted by thumb drive to the clerk with a courtesy copy to the Court's chambers as **EXHIBIT F**. Those recordings are also currently available on the City of Petaluma's website at the following urls.

April 20, 2021 Ad Hoc Community Advisory Committee meeting:

https://petaluma.granicus.com/player/clip/3265?view_id=31&redirect=true

May 18, 2021 Ad Hoc Community Advisory Committee meeting:

https://petaluma.granicus.com/player/clip/3289?view_id=31&redirect=true

I reviewed these video recordings, and they accurately reflect what occurred at the meetings.

41. I attended the July 12, 2021 Petaluma City Council meeting and I reviewed the video recording of the meeting which was held by Zoom. None of the public comments alleged that my presence or my prior social media posts had disrupted the Committee meetings.

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Date: August 23, 2021    _____
                         Stefan Perez

-6-