1

2

3

4        UNITED STATES DISTRICT COURT

5       NORTHERN DISTRICT OF CALIFORNIA

6

7 SERAFIN "STEFAN" JOSE PEREZ,   Case No. 21-cv-06190-JST

8      Plaintiff,

              **ORDER DENYING PRELIMINARY**
9   v.              **INJUNCTION**

10 CITY OF PETALUMA, et al.,     Re: ECF No. 5

11      Defendants.

12

13    Before the Court is Plaintiff Serafin "Stefan" Jose Perez, Jr.'s ex parte application for a

14 temporary restraining order ("TRO") and order to show cause why a preliminary injunction should

15 not issue.  ECF No. 5.  On August 13, 2021, the Court denied the application for a TRO and

16 ordered the City of Petaluma and the Petaluma City Council ("Defendants") to show cause why

17 they should not be preliminarily enjoined pending litigation of this action.  ECF No. 15.  The

18 Court now denies Perez's motion for a preliminary injunction.

19 **I.  BACKGROUND**

20    On March 15, 2021, the Petaluma City Council passed a resolution creating an Ad Hoc

21 Community Advisory Committee (the "Committee") "to work with the City Manager and Chief of

22 Police to develop recommendations . . . to address Petaluma community race relations and

23 promote diversity, equity, and inclusion Citywide and regarding police policies."  ECF No. 1

24 ("Compl.") ¶ 1.  Plaintiff was appointed to the Committee, which consists of approximately 22

25 members and was scheduled to meet once a month for six months starting in April 2021.  *Id.* ¶¶ 1,

26 12, 15.

27    Perez's appointment was controversial from the inception because of the perception that he

28 had expressed racist views in the past that were contrary to the Committee's goals, and several

people wrote to the Council or city officials to express their concerns.  For example, on May 21, 2021, one person wrote, "It has come to my attention that a member of your Ad-hoc Community Advisory Committee, Stefan Perez, is a right-wing extremist, who is known to post racist and anti-Semetic [sic] memes on social media. . . .  He must be removed immediately."  ECF No. 20 at 81. Another asked the Council "[t]o remove Stefan Perez from the Ad Hoc Community Advisory Committee, because he has a long history of antagonizing local people of color, has been revealed to be a white nationalist spreading disinformation about local activists, and the process by which he was added to the committee in the first place represents a short circuiting of due diligence, if not also due process."  *Id.* at 79.

In the midst of this controversy, on June 15, 2021, Plaintiff met with the City Manager, the City Attorney, and the Ad Hoc Committee Facilitator to discuss tweets Plaintiff made in March 2020 that other Committee members found objectionable.  ECF No. 1 ¶¶ 17-19.  Plaintiff was asked to resign from the Committee.  *Id.* ¶ 19.  Plaintiff agreed to skip the June Committee meeting while he considered City officials' request but refused to resign.  *Id.* ¶¶ 19-21.

On July 12, 2021, the City Council considered a resolution to remove Plaintiff from the Committee by amending the March 15 resolution.  *Id.* ¶ 2.  The Council heard public comment at great length before voting on the resolution.  Petaluma City Council Meeting Minutes (July 12, 2021) ("Minutes") https://petaluma.granicus.com/MinutesViewer.php?view_id=31&clip_id=3340&doc_id=61644e59-e417-11eb-b92a-0050569183fa (last visited Aug. 30, 2021).  "Eighteen people spoke during [the] public comment" portion of the Council meeting, both in favor of and against Perez's removal.  ECF No. 1 ¶ 27.  In addition, members of the public submitted eight written comments: five in favor of Perez's removal and three against.  *Id.* ¶ 26.  In public testimony, one citizen described Perez as "seem[ing] to be hell bent on working against" the Committee and "working actively against the mission statement for which [he was] appointed."  Minutes at 58:04-59:35. Another testified that Perez "act[ed] completely contrary to [the] Committee's goals" and described the proposed resolution as a means of "protect[ing] the work of [the] Committee" and as a "signal that we care about getting the work done and keeping our commitments."  *Id.* at 1:14:05-

1  1:15:28.  Citizen Corrie Johnson provided a written public comment stating that "Perez has shown

2  that he wants to undermine [the Committee's] goals."  After considering these and other

3  comments, the Council, by a vote of 5-1, adopted the resolution and terminated Perez's

4  participation on the Committee.  ECF No. 1 ¶ 28.

5  Plaintiff now seeks reinstatement on the Committee and to enjoin Defendants from

6  implementing the July 12 resolution.  ECF No. 5 at 5.

7  **II.     JURISDICTION**

8  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

9  **III.    LEGAL STANDARD**

10  The Court applies a familiar four-factor test on both a motion for a temporary restraining

11  order and a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush &*

12  *Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Preliminary relief is "an extraordinary remedy that

13  may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v.*

14  *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain preliminary injunctive relief, the

15  moving party must show:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable

16  harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips

17  in favor of the moving party; and (4) that an injunction is in the public interest.  *Id.* at 20.

18  "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the

19  plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that

20  there is a likelihood of irreparable injury and that the injunction is in the public interest."  *All. for*

21  *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).  Due

22  to the exigent nature of a preliminary injunction, a court may consider hearsay and other evidence

23  that would otherwise be inadmissible at trial.  *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th

24  Cir. 2009).[1]

25

26

27

28  [1] The Court therefore does not consider "Plaintiff's objections to evidence" in Perez's reply brief.  *See* ECF No. 18 at 18-19.

3

United States District Court
Northern District of California

1    IV.    DISCUSSION

2          A.    Type of Injunction

3          Preliminary relief may take two forms: it may be prohibitory or mandatory in nature.  "A

4    prohibitory injunction prohibits a party from taking action and preserves the status quo pending a

5    determination of the action on the merits."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH

6    & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (alterations and quotation marks omitted).  A mandatory

7    injunction orders a party to take action.  *Id.* at 879.  Because mandatory injunctions do more than

8    preserve the status quo, they are "particularly disfavored," and the Ninth Circuit has observed that

9    "courts should be extremely cautious about issuing a preliminary injunction" in those

10   circumstances.  *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).  "In general,

11   mandatory injunctions are not granted unless extreme or very serious damage will result and are

12   not issued in doubtful cases or where the injury complained of is capable of compensation in

13   damages."  *Marlyn Nutraceuticals*, 571 F.3d at 879.

14         Defendants contend that Perez seeks a mandatory injunction because he "seeks an

15   injunction that goes beyond maintaining the status quo (the status quo being that Plaintiff is *not* a

16   member of the Committee)."  ECF No. 16 at 10 (emphasis in original).  Perez responds that this

17   "mischaracterizes the relief Mr. Perez seeks," explaining that "[a]n injunction preventing future

18   unconstitutional conduct is a classic form of prohibitory injunction."  ECF No. 18 at 6 (quotation

19   marks and citation omitted).  Perez was removed from the Committee through the July 12

20   resolution and seeks to be reinstated.  Perez's return to the Committee would be a change to the

21   status quo and therefore requires a mandatory injunction.  *See, e.g.*, *Heineke v. Santa Clara Univ.*,

22   No. 17-CV-05285-LHK, 2018 WL 3368455, at *24-25 (N.D. Cal. July 10, 2018), *aff'd in relevant

23   part*, 812 F. App'x 644 (9th Cir. 2020) (emphasizing as "significant" that "the nature of the

24   injunctive relief that Plaintiff seeks has . . . changed from a prohibitory injunction (preventing

25   SCU from suspending or firing Plaintiff) to a mandatory injunction (reinstating Plaintiff)").  The

26   Court thus analyzes Perez's motion as one seeking mandatory injunctive relief.

27         B.    Likelihood of Success on the Merits

28         The parties both contend that *Pickering v. Board of Education of Township High School*

4

*District 205, Will County, Illinois*, 391 U.S. 563 (1968), and its progeny – relevant to speech by government employees – apply here.  The Court agrees.  *See Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992) ("The injury to position or privilege necessary to activate the First Amendment thus need not rise to the level of lost employment.  Retaliatory actions with less momentous consequences, such as loss of a volunteer position, are equally egregious . . . because a person is being punished for engaging in protected speech.").  Although the social media posts that the City takes issue with occurred before Perez was appointed to the Committee, this does not prevent the application of the *Pickering* balancing test.  *See, e.g.*, *Worrell v. Henry,* 219 F.3d 1197, 1207 (10th Cir. 2000) (applying *Pickering* to the withdrawal of an employment offer after the employer discovered the employee's past speech activity); *see also Hernandez v. City of Phoenix*, 432 F. Supp. 3d 1049, 1063 n.3 (D. Ariz. 2020) (discussing case law regarding off-duty and non-work related speech and noting that "the Second Circuit has explained that speech is 'work related' if the speech impacts the work place").

The Ninth Circuit has explained the *Pickering* "framework to balance the free speech of government employees with the government's interest in avoiding disruption and maintaining workforce discipline" as follows:

> [T]he plaintiff first has to establish that '(1) [ ]he spoke on a matter of public concern; (2) [ ]he spoke as a private citizen rather than a public employee; and (3) the relevant speech was a substantial or motivating factor in the adverse employment action." *Barone v. City of Springfield, Or.*, 902 F.3d 1091, 1098 (9th Cir. 2018).  If the plaintiff establishes this prima facie case, the burden then shifts to the government to show "that (4) it had an adequate justification for treating [its employee] differently than other members of the general public; or (5) it would have taken the adverse employment action even absent the protected speech." *Id*.  If the government does not meet its burden, then the First Amendment protects the plaintiff's speech as a matter of law.

*Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 904-05 (9th Cir. 2021).  "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391

United States District Court
Northern District of California

1    U.S. at 568.

2           First, there is no dispute that Perez spoke as a private citizen rather than a public employee

3    in his social media posts.  Second, although Defendants contend that they were responding to the

4    public's reaction to Perez's speech, rather than the speech itself, and also point to testimony from

5    the July 12 City Council meeting that "plaintiff 'doxxed' [two women], causing one to receive

6    death threats online and at her home" and that Perez "illegally record[ed] people," Defendants do

7    not dispute that Perez's "troubling social media posts" were at least one motivating factor in his

8    removal from the Committee.  ECF No. 16 at 14-15 (explaining that "Plaintiff's 'blatantly racist'

9    social media posts . . . impeded the work of the Committee").  Finally, Defendants concede that at

10   least some of Perez's social media posts touched on matters of public concern.  *Id.* at 6 ("This case

11   is about Plaintiff's numerous troubling and inflammatory social media posts (most of which

12   involve little to no issue of public concern) which disrupted and distracted from the important

13   work of the Committee.").  Perez has therefore established a prima facie case.

14          Defendants have pointed to specific social media posts and other speech that Perez does

15   not contend were about matters of public concern as contributing to his removal from the

16   Committee.  *See, e.g.*, ECF No. 16-1 at 17 (a tweet from Stefan Perez with a photo of a man

17   dressed in a Nazi uniform holding a hentai pillow and wearing costume paws in response to a

18   tweet that "Nazis are incels with a secret hentai collection")[2]; ECF No. 16 at 15 (describing

19   allegations of Perez doxing individuals and "using [illegal] recordings to 'bolster Nazi cred

20   online'").  Perez asserts that other factors motivating his removal from the Committee are

21   irrelevant so long as he was removed in part because of his protected speech.  *See Hyland*, 972

22   F.2d at 1137 ("If some part of the communication addresses an issue of public concern, the First

23   Amendment's protections are triggered even though other aspects of the communication do not

24   qualify as a public concern.") (citing *Connick v. Myers*, 461 U.S. 138, 149 (1983)).  However,

25   neither *Hyland* and *Connick* is directly on point, because both considered a single communication

26   that included some speech regarding matters of public concern, rather than several

27

28   _____
     [2] Perez does not argue that this communication was protected speech.

6

1    communications some of which did not address matters of public concern at all.  *See id.* at 1133

2    (Hyland terminated solely based on memorandum), 1137 (holding "Hyland's memorandum spoke

3    to a matter of public concern"); *Connick*, 461 U.S. at 149 (explaining that "[o]ne question in

4    Myers' questionnaire . . . touch[ed] upon a matter of public concern").  It is not clear whether the

5    circumstances presented here – several instances of different speech, some of which were about

6    matters of public concern and some of which were not – require the same holding.[3]  *Cf. Lane v.*

7    *Franks*, 573 U.S. 228, 242 n.5 (2014) ("Of course, quite apart from *Pickering* balancing,

8    wrongdoing that an employee admits to while testifying may be a valid basis for termination or

9    other discipline.").  However, the Court need not resolve that question because even accepting that

10   Defendants removed Perez from the Committee based in part on protected speech, "the

11   government's interest in promoting an effective workplace [can] outweigh[] [Perez's] First

12   Amendment rights."  *Hyland*, 972 F.2d at 1139 (citing *Rankin v. McPherson*, 483 U.S. 378, 388

13   (1987)).

14          The Court balances "the interests of the [public employee], as a citizen, in commenting

15   upon matters of public concern and the interest of the State, as an employer, in promoting the

16   efficiency of the public services it performs through its employees."  *Lane*, 573 U.S. at 236.  This

17   balancing test "entails a factual inquiry into such matters as whether the speech (i) impairs

18   discipline or control by superiors, (ii) disrupts co-worker relations, (iii) erodes a close working

19   relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's

20   performance of her or his duties, or (v) obstructs the routine operation of the office." *Hyland*, 972

21   F.2d at 1139 (citations omitted).  "[C]ourts must give government employers 'wide discretion and

22   control over the management of [their] personnel and internal affairs.  This includes the

23   prerogative to remove employees whose conduct hinders efficient operation and to do so with

24   dispatch.'"  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 979 (9th Cir.

25   1998) (alteration in original) (quoting *Connick*, 461 U.S. at 151).  Courts are also to "give[ ]

26

27   _____

     [3] The Court notes that such a conclusion would effectively immunize Perez from removal from the
     Committee regardless of what conduct or speech he engaged in, so long as a single
28   communication addressed matters of public concern.

United States District Court
Northern District of California

1  substantial weight to government employers' reasonable predictions of disruption, even when the

2  speech involved is on a matter of public concern." *Waters v. Churchill*, 511 U.S. 661, 673 (1994);

3  *see also Lane*, 573 U.S. at 542 (noting that "a stronger showing of government interests may be

4  necessary if the employee's speech more substantially involves matters of public concern."

5  (alterations and citation omitted)).

6        Without expressing a view as to whether the Council should have removed Perez from the

7  Committee – a subject on which the Court holds no view – and given the extreme caution the

8  Court must employ in deciding whether to issue a mandatory injunction, *Martin*, 740 F.2d at 675,

9  the Court holds that Perez is not entitled to an injunction on this record.  That record makes clear

10  that Perez's speech and actions disrupted co-worker relations, interfered with Perez's performance

11  of his duties on the Committee, and obstructed the work of the Committee.  Given the number and

12  content of the complaints regarding Perez's position on the Committee, it also was not

13  unreasonable for Defendants to predict disruption to the Committee's work if Perez remained a

14  member.  Even Perez himself acknowledged more than once that his social media posts and

15  presence on the Committee were distracting from the Committee's purpose.  *See, e.g.*, ECF No. 20

16  at 69 ("It was never my intention to divert attention away from the work of this body"); *id.* at 86

17  ("false allegations against me have taken focus away from the goals of this committee"); *id.* at

18  121-22 ("It wasn't the intention for my existence on the committee to be such a distraction.").

19  Considering these admissions, and the testimony of the nineteen individuals – including both

20  members of the community and members of the Committee – who voiced their support for the

21  July 12 resolution removing Perez from the Committee, Defendants "had 'an adequate

22  justification for treating the employee differently from any other member of the public' based on

23  the government's needs as an employer.'"  *Lane*, 573 U.S. at 242.  Under the *Pickering* balancing

24  test, the government interest therefore outweighed Perez's First Amendment right to free speech.

25        The Court notes that Perez refutes Defendants' argument that "[a]ny appeal by Plaintiff to

26  the concept of the 'heckler's veto' would be misplaced."  ECF No. 16 at 12 n.3.  However,

27  "[w]orries about a heckler's veto . . . do not directly relate to the wholly separate area of employee

28  activities that affect the public's view of a governmental agency in a negative fashion, and,

United States District Court<br>Northern District of California

8

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

thereby, affect the agency's mission." *Dible v. City of Chandler*, 515 F.3d 918, 928-29 (9th Cir.

2008). *Dible* emphasized the "unique and sensitive position of a police department and its

necessary and constant interactions with the public." *Id.* at 929. The Committee was in a

similarly sensitive position as its purpose was to discuss "issues that have been identified as

contributing to community members not feeling safe," to "develop[] recommendations for . . . the

City Council on citywide and police policies," and to "recommend[] a variety of DEI

considerations to improve race relations in Petaluma." ECF No. 5-1 at 8. Perez's attempts to

distinguish *Dible* are therefore unavailing. *See* ECF No. 18 at 13-14.

9

10

11

12

13

14

Finally, because Perez seeks a mandatory injunction, his burden is "doubly demanding"

because he "must establish that the law and facts *clearly favor* [his] position, not simply that [he]

is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in

original). Perez has not met this "very high standard." *Gescheidt v. Haaland*, No. 21-CV-04734-

HSG, 2021 WL 3291873, at *6 (N.D. Cal. Aug. 2, 2021). As Perez fails to demonstrate a

likelihood of success on the merits, the Court need not reach the other *Winter* factors.

15

**CONCLUSION**

16

17

18

19

Plaintiff's motion for a preliminary injunction is DENIED. Plaintiff's request for leave to

amend his complaint to add individual defendants and a damages claim is GRANTED. *See e.g.*,

Fed. R. Civ. P. 15(a)(2) (a "court should freely give leave [to amend] when justice so requires").

Any amended complaint is due within 21 days of the date of this order.

20

**IT IS SO ORDERED.**

21

Dated: August 31, 2021



JON S. TIGAR
United States District Judge

22

23

24

25

26

27

28

9